IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID T. MORROW,

        Petitioner,

    vs.                           Case No. 11-cv-675-JPG

UNITED STATES OF AMERICA,

        Respondent.

**MEMORANDUM AND ORDER**

This matter comes before the Court on petitioner David T. Morrow's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The Government filed a response (Doc. 17), to which Morrow replied (Doc. 19). For the following reasons, the Court denies Morrow's § 2255 motion.

**1. Facts and Procedural History**

From the early 2000s until their apprehension in this case, Morrow and his codefendants sold crack in the Mt. Vernon, Illinois, area. Sometimes their crack operation took place out of a residence in Mt. Vernon, Illinois. To obtain crack to sell, Morrow and other codefendants would pool their money together and travel to meet their out-of-town sources from whom they purchased crack in St. Louis and Memphis.

The Government filed an indictment on January 11, 2007, and a superseding indictment on March 8, 2007, in which Count One charged that Morrow and his codefendants conspired to distribute more than fifty grams of crack from "in or about February 2003, to on or about March 7, 2007, in Jefferson County, within the Southern District of Illinois, Tennessee, and elsewhere." *United States v. Morrow*, Case No. 07-cr-40006-JPG, Docs. 1 & 27 in criminal case. Count Ten

charged that Morrow "did knowingly use a place, namely the residence located at 425 South 17th Street, Mt. Vernon, Illinois, for the purpose of distributing" crack. *Id*. at 5.

Throughout the underlying proceedings, Morrow had a total of four attorneys. The Court initially appointed attorney David M. Williams to represent Morrow in his underlying criminal case. Due to Williams' refusal to file a frivolous motion, Morrow insisted that Williams withdraw as counsel, and the Court granted Williams' motion to withdraw on June 5, 2007. Thereafter, the Court appointed attorney Terry M. Green to represent Morrow. Green represented Morrow at trial. After trial, Morrow complained of his counsel's performance and moved the court to appoint new counsel. The Court granted that motion and on November 30, 2007, appointed attorney Phillip A. Kramer to represent Morrow. Before sentencing, however, Kramer filed a motion to withdraw as Morrow's attorney. Kramer's motion explained that Morrow requested that Kramer file a frivolous motion, Kramer refused, and Morrow insisted that Kramer withdraw so Morrow could represent himself *pro se*. The Court denied Kramer's motion, and Kramer represented Morrow at sentencing on February 29, 2008. Thereafter, attorney Susan Kister represented Morrow on direct appeal. *See United States v. Harris*, 567 F.3d 846 (7th Cir. 2009).

At trial, two interviews between Morrow and law enforcement were admitted into evidence. On June 14, 2004, Officer Vic Koontz and Task Force Officer Ronnie Almaroad interviewed Morrow at the Mt. Vernon Police Department resulting in his charge of possession of less than 15 grams of cocaine in Jefferson County, Illinois, case number 04-CF-674. At the time of that interview, Morrow had a felony charge for unlawful possession with intent to deliver a controlled substance pending in Jefferson County, Illinois, case number 03-CF-509, for which he was represented by counsel. Then, on January 18, 2007, Task Force Officer Ronnie

Almaroad, DEA Special Agent David Gourley, and Detective Nic Dill interviewed Morrow concerning a "possible future Federal indictment" for "a conspiracy to distribute crack cocaine." Doc. 17-1.  At the time of the January 18, 2007, interview Morrow had two pending felony charges in Jefferson County, Illinois, case numbers 03-CF-509 and 04-CF-674.  Morrow was represented by counsel in both cases, and both state cases included conducted considered part of the federal conspiracy.  The Government also introduced other evidence at trial including: (1) crack from Morrow's 2003 arrest; (2) scales, baggies, drug paraphernalia, and cash from a search of Morrow's residence in June 2004, and (3) cocaine that officers seized from unindicted co-conspirator Charlie Williams in April 2006.

At trial, the relevant portions of Green's opening statement included the following:

[Morrow] has acknowledged to the police officers on occasions that he did, in fact, sell drugs.  Now he's not charged with selling any drugs.  I believe there will be evidence, particular dates of allegations, that he may have been involved with some type of drugs.  But this is about some type of conspiracy, some type of an agreement that existed.

. . .

I know it seems a stretch, and I don't come in here to condone what [Morrow] had done previously in personal drug dealing, but he never joined a conspiracy.  He didn't have agreement with people to distribute drugs.

Doc. 183, pp. 12-13 in criminal case.  His closing statement included the following relevant portions:

I stood before you three days ago when we started this case, and I acknowledged to you that [Morrow] has told the police officers that, "Yes, I have sold drugs previously.  I have done certain things."  And he, himself, related that to police.  But as it says here and as [Assistant United States Attorney George] Norwood has told you, this is whether or not [Morrow] has entered into an agreement with the people that the government said that he has.  And I put it to you they have not shown that case.

Doc. 185, p. 395 in criminal case.

3

On August 22, 2007, a jury found Morrow guilty of conspiracy to distribute and possess with intent to distribute 50 grams or more of crack and use of a residence for the purpose of distributing crack. Docs. 108, 109 & 110 in criminal case. Morrow's relevant conduct included over 4.5 kilograms of crack. The statutory range for Count One was 20 years to life, and the statutory maximum penalty for Count Ten was 240 months. Morrow's guideline range was life imprisonment. On February 29, 2008, the undersigned judge sentenced Morrow to 504 months imprisonment on Count One and 240 months imprisonment on Count Ten; ten years supervised release on Count One and three years supervised release on Count Ten, to run concurrently; a $200 special assessment; and a $500 fine.

Co-conspirator Dekal James[1], on the other hand, pleaded guilty and cooperated with the Government. Dekal James' relevant conduct included between 150 to 500 grams of crack. He had a sentencing range of 262 to 327 months on Counts One, Five (distributing less than five grams of crack on July 25, 2006), and Six (distributing less than five grams of crack on August 9, 2006) and 240 months on Count Ten. Ultimately, Dekal James received a guideline sentence of 262 months. Doc. 188 in criminal case. Co-conspirator Charlie Williams was never indicted and thus never sentenced.

Morrow appealed his sentence, and the Seventh Circuit Court of Appeals remanded Morrow's case for resentencing because it was not "assured that the district court considered all of the relevant 18 U.S.C. § 3553(a) factors, including his health problems, when it imposed a 504-month sentence." *United States v. Harris*, 567 F.3d 846, 848 (7th Cir. 2009). This Court re-sentenced Morrow on March 11, 2010, once again imposing a 504-month sentence. Doc. 400 in criminal case. Once again, Morrow appealed, and the Seventh Circuit Court of Appeals affirmed

---

[1] The Court notes that two of Morrow's codefendants have the last name James, Dekal James and Damian James. Only Dekal James is at issue in this order

his sentence imposed at re-sentencing.  *United States v. Morrow*, 418 F. App'x 537, 539 (7th Cir. 2011).

Morrow filed the instant § 2255 motion on August 8, 2011, alleging nine grounds for relief as follows: (1) counsel failed to challenge the introduction of evidence that was obtained in violation of Morrow's Sixth Amendment right to counsel; (2) counsel failed to file a motion *in limine* to exclude evidence under Federal Rule of Evidence 404(b); (3) counsel failed to object to jury instructions regarding conspiracy that did not conform to the indictment; (4) counsel failed to challenge the defective indictment; (5) counsel admitted Morrow's guilt in his opening and closing statements; (6) counsel failed to investigate the circumstances of the 2004 and 2007 police interrogations of Morrow that were introduced at trial, which would have shown violations of Morrow's right to counsel, failed to request a hearing on the admissibility of that evidence under Rule 404(b), and failed to object at trial in order to preserve errors for appellate review; (7) counsel failed to investigate mitigating factors or prepare for sentencing, failed to raise a *Booker* claim, and failed to challenge the addition of sentencing points for possession of a weapon; (8) Morrow was denied a fair trial when the prosecutor introduced perjured testimony; and (9) Morrow was denied a fair trial due to the Judge's (a) bias against him, and (b) failure to properly instruct the jury on evidence introduced under Rule 404(b).

## 2. **Analysis**

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255.  However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).  "Relief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental

defect which inherently results in a complete miscarriage of justice." *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). The Court will first address Morrow's ineffective assistance of counsel claims.

### a. Ineffective Assistance of Counsel Claims

The failure to hear a claim for ineffective assistance of counsel in a § 2255 motion is generally considered to work a fundamental miscarriage of justice because often such claims can be heard in no other forum. They are rarely appropriate for direct review since they often turn on events not contained in the record of a criminal proceeding. *Massaro v. United States*, 538 U.S. 500, 504-05 (2003); *Fountain v. United States*, 211 F.3d 429, 433-34 (7th Cir. 2000). In addition, the district court before which the original criminal trial occurred, not an appellate court, is in the best position to initially make the determination about the effectiveness of counsel in a particular trial and potential prejudice that stemmed from counsel's performance. *Massaro*, 538 U.S. at 504-05. For these reasons, ineffective assistance of counsel claims, regardless of their substance, may be raised for the first time in a § 2255 petition.

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).

A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 2431 (2010); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt*, 574 F.3d at 458. The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *accord Wyatt*, 574 F.3d at 458. Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Strickland*, 466 U.S. at 689. The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. *United States v. Jones*, 635 F.3d 909, 915-16 (7th Cir. 2011); *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

### i. Introduction of the 2004 and 2007 Law Enforcement Interviews Did Not Violate Morrow's Sixth Amendment Right to Counsel

Morrow first argues that counsel was ineffective for failing to file a motion to suppress or object to the introduction of the June 14, 2004, and January 18, 2007, video-taped interviews with law enforcement.  Morrow argues that his Sixth Amendment right to counsel was violated when the interviews were introduced into evidence because the officers interviewed him without counsel from his Jefferson County, Illinois, cases present.  Accordingly, Morrow contends Green was ineffective for failing to move to suppress these interviews at trial on the ground that they violated Morrow's Sixth Amendment right to counsel.  Morrow further asks this Court to order the production of grand jury transcripts and hold an evidentiary hearing.  The Government responded arguing that counsel was not ineffective, because the Sixth Amendment right to counsel is case-specific and officers did not ask Morrow about the cases in which he had counsel.

The Sixth Amendment right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."  *Kirby v. Illinois*, 406 U.S. 682, 689 (1972); *accord Texas v. Cobb*, 532 U.S. 162, 167-68 (2001); *Quadrini v. Clusen*, 864 F.2d 577, 589 (7th Cir. 1989).  "Once formal criminal proceedings begin, the Sixth Amendment renders inadmissible in the prosecution's case in chief statements 'deliberately elicited' from a defendant without an express waiver of the right to counsel."  *Michigan v. Harvey*, 494 U.S. 344, 348 (1990); s*ee also Massiah v. United States*, 377 U.S. 201 (1964); *Quadrini*, 864 F.2d at 585.

The Sixth Amendment right to counsel is offense specific.  *Cobb*, 532 U.S. at 167; *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).  A defendant formally charged with one crime does not have a Sixth Amendment right to counsel during interrogation about another crime with

which he has not been formally charged.  The Sixth Amendment right to counsel "cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced. . . ." *McNeil*, 501 U.S. at 175.  Although lower courts in the past have held that there is a limited exception to this rule for charged and uncharged crimes that are "factually related" or "inextricably intertwined," the Supreme Court has firmly rejected such an exception.  *Cobb*, 532 U.S. at 168.

"When the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test." *Cobb*, 532 U.S. at 173.  *Blockburger* "explained that 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'"  *Id*. (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).  It has long been accepted that a substantive offense and a conspiracy are two separate offenses for double jeopardy purposes, *Pinkerton v. United States*, 328 U.S. 640, 643-44 (1946), and *Cobb* extends the *Blockburger* double jeopardy analysis of "offenses" to the Sixth Amendment right-to-counsel analysis.  *Cobb*, 532 U.S. at 172-73.

The introduction of interviews with law enforcement officers did not violate Morrow's Sixth Amendment right to counsel in this case.  At the time of these interviews, Morrow clearly had a Sixth Amendment right to counsel in his *state* cases involving the underlying substantive offenses.  If law enforcement were to seek to introduce evidence obtained in these interviews in his state cases, the evidence would be subject to suppression.  However, at the time of these interviews, Morrow had not yet been indicted on the federal conspiracy charge, a well-established separate offenses from his state-law substantive offenses.  As the Supreme Court

9

explained in *McNeil*, Morrow's Sixth Amendment right to counsel is offense specific and had not attached in his federal criminal case at the time of the interviews.  Officers were free to question him about crimes other than those alleged in the state charges.  Thus, any motion to suppress these videos on Sixth Amendment grounds would have been frivolous.  Accordingly, Green performance was not sufficient when he failed to move to suppress the videos of the two interviews.  Further, Morrow suffered no prejudice because the Court would have denied a motion to suppress the videos.

### ii.  The Listed Items did not Constitute 404(b) Evidence

Next, Morrow argues that Green was ineffective for failing to file a motion *in limine* to exclude certain evidence Morrow deems to be 404(b) evidence.  Specifically, Morrow contends that the following evidence constituted improperly admitted 404(b) evidence: (1) crack from Morrow's 2003 arrest; (2) scales, baggies, drug paraphernalia, and cash from the search of Morrow's residence in June 2004, and (3) cocaine seized from unindicted co-conspirator Charlie Williams in April 2006.  The Government responded arguing that this evidence was not introduced as 404(b) evidence, but as part of the conspiracy.

Federal Rule of Evidence 404(b) provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."  Accordingly, if these above-listed items were introduced to prove Morrow's propensity to commit a certain crime, they would be subject to 404(b).

The above-listed items were seized from Morrow within the timeframe he was alleged to have engaged in the conspiracy.  Accordingly, these items were not introduced to prove Morrow's propensity, but were introduced as underlying acts to prove Morrow was engaged in a conspiracy.  Because they were part of the charged crime, the 404(b) analysis is irrelevant to

10

their introduction.  Any motion to exclude these items from evidence based on 404(b) would have been frivolous.  Accordingly, Green's performance was not deficient for failing to move to exclude this evidence.  Further, Morrow was not prejudiced because the Court would have denied such a motion.

### iii.   Green was not Ineffective for Failing to Make A Fifth Amendment Argument or Submit a Venue Instruction to the Jury

Next, Morrow argues that because the Government included "the Southern District of Illinois, Tennessee, and elsewhere" in the indictment, he was entitled to a jury instruction instructing the jury they must find the conspiracy took place in these locations beyond a reasonable doubt.  Accordingly, he reasons Green was ineffective for failing to object to the omission of such an instruction.  The Government responded arguing that Morrow was not entitled to a jury instruction on venue.  Rather than arguing he was entitled to a venue jury instruction, Morrow seems to be arguing that the Government constructively amended the indictment in violation of the Grand Jury Clause of the Fifth Amendment.

The Fifth Amendment requires that a conviction must be limited to what is contained within the indictment.  *United States v. Willoughby*, 27 F.3d 263, 266 (7th Cir. 1994).  An indictment "may not be 'amended except by resubmission to the grand jury.'"  *United States v. Leichtnam*, 948 F.2d 370, 376 (7th Cir. 1991) (quoting *Russell v. United States*, 369 U.S. 749, 770 (1962)).  However, "variances" and "departures" from the indictment do not constitute "amendments."  *Leichtnam*, 948 F.2d at 376.

Variations include "changes that are 'merely a matter of form,'" such as corrections to typographical errors or misnomers.  *Id.* (quoting *Russell*, 369 U.S. at 770).  A "departure" from the indictment occurs "if all that has happened is that the evidence or the charges submitted to the trial jury wind up being simply a more limited version of the charges in the indictment."

*Leichtnam*, 948 F.2d at 376.  Such a narrowing of the indictment does not require resubmission

to the grand jury.  *Id*.  An example of a departure may occur "when one count of a multi-count

indictment is withdrawn from the trial jury's consideration."  *Id*.  A departure may also occur

"when a single count of an indictment charges more than one commission of the same offense

(or more than one way of committing it), yet either the evidence, the instructions to the jury or

both cover only one – or the indictment is physically amended to charge only one."  *Id*. (citing

*United States v. Miller*, 471 U.S. 130, 140-45 (1985)).

> Importantly, the Seventh Circuit explained that
>
> [a]nother example of an allowable narrowing would be to an indictment that
> charges a conspiracy or scheme and describes, in detail, the roles of each of the
> coconspirators and the story of the scheme. If the evidence at trial turns out not to
> prove every single fact set out in the indictment, but still proves the same
> conspiracy or scheme as outlined in the indictment, or a somewhat smaller
> version of it (but not a different conspiracy or scheme), and also proves the same
> criminal acts as charged in the indictment, or a subset of them, the right to a grand
> jury has not been denied – not by the difference between the evidence and the
> details in the indictment and not by instructions that require proof of each
> essential element of every charge submitted to the jury but do not demand proof
> of every single fact in the indictment. *United States v. Williams,* 798 F.2d 1024,
> 1030-33 (7th Cir.1986); *United States v. Kuna,* 760 F.2d 813, 817-19 (7th
> Cir.1985).

*Leichtnam*, 948 F.2d at 377.

Here, contrary to Morrow's contention, the Government was not required to prove the

conspiracy existed in each location listed in the indictment.  Even if the Government did fail to

prove the conspiracy occurred in each listed location, that failure was an "allowable narrowing"

of the indictment as described in *Leichtnam*.  Thus, the indictment was not amended and

Morrow's Fifth Amendment rights were not at issue.  Accordingly, Green's performance was not

deficient when he failed to submit a jury instruction requiring the jury to find a portion of the

conspiracy occurred at each location listed in the indictment.  Further, Morrow suffered no prejudice because the Court would not have submitted such an instruction to the jury.

Morrow's argument also fails to the extent he argues Green was ineffective for failing to submit a venue instruction to the jury.  "Although venue is an essential element which the Government must prove, it is an element more akin to jurisdiction than to the substantive elements of the crime."  *United States v. Massa*, 686 F.2d 526 (7th Cir. 1982).  "Venue need only be proved by a preponderance of the evidence."  *Id*.  Further, "a defendant is not entitled to a venue instruction unless venue is specifically at issue."  *United States v. Muhammad*, 502 F.3d 646, 655 (7th Cir. 2007).

Here, the evidence overwhelmingly showed that Morrow committed the conspiracy within the Southern District of Illinois, and venue was not specifically at issue.  For instance, Morrow was found guilty of maintaining a home in Jefferson County, Illinois, for purposes of the conspiracy, and the underlying substantive offenses occurred within the Southern District of Illinois.  Morrow does not contend, nor could he, that the jury could have found beyond a reasonable doubt that Morrow was guilty of the conspiracy without believing that his conduct occurred within the Southern District of Illinois.  Accordingly, Green's performance was not deficient when he failed to request a jury instruction regarding venue.  Further, Morrow was not prejudiced because the Court would not have given that instruction to the jury.

Within this portion of the motion, Morrow also argues that Green was ineffective for failing to object to a jury instruction that incorrectly instructed the jury with regard to his charge in Count Ten.  He seems to contend that Green unreasonably failed to argue that the law requires the residence be used *only* for the purposes of distributing crack.

The "crackhouse statute" provides that" it shall be unlawful to (1) knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance . . . ." 21 U.S.C. § 856(a)(1). Crack distribution need not be the *sole* purpose of the facility. *United States v. Church*, 970 F.2d 401, 406 (7th Cir. 1992).

Here, any argument by Green that the jury should be instructed they must find the house was used for the *sole* purpose of crack distribution in order to find Morrow guilty would have been frivolous. Such an argument is directly at odds with the Seventh Circuit's holding in *Church*. Accordingly, Green's performance was not deficient. Further, Morrow suffered no prejudice because the Court would not have given this incorrect instruction to the jury.

### iv.   Count Ten was not Defective

Next, Morrow contends that Green was ineffective for failing to challenge the defective indictment. Specifically, Morrow argues that Count Ten of the indictment was defective because it omitted the statutory words of "open or maintain" and only charged that he "use[d]" a place for the purpose of distributing crack. Doc. 1, p. 36.

The right to have every element of an offense charged in the indictment derives from the Fifth Amendment's grand jury clause and the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right be informed of the nature and cause of the accusation." *Russell v. United States*, 369 U.S. 749, 760-61 (1962). However, "[t]here is no requirement that an indictment parrot the language of a statute; the inquiry is merely whether it clearly sets forth all of the elements of the offense." *United States v. Andrews*, 754 F. Supp. 1189, 1192 (N.D. Ill. 1990). Title 21 U.S.C. § 856(a)(1), the statute at issue in Count Ten, provides "it shall be unlawful to knowingly open, lease, rent, use, or maintain any place, whether

permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance."

Here, the statute lists several ways in which a violation of the statute may occur including to "knowingly open, lease, rent, use, or maintain any place . . . ."  In the Superseding Indictment, the Government clearly put Morrow on notice that he was charged with violating the statute through the knowing "use" of a place.  The indictment lists all of the elements of the offense, and the Government was not required to mimic the statute or list every possible way an offender may violate the statute.  Accordingly, the indictment is sufficient.  Thus, Green was not deficient for failing to challenge Count Ten's sufficiency.  Further, Morrow suffered no prejudice because the Court would have denied any motion to dismiss Count Ten on the grounds that it was deficient.

### v.  Green Used a Reasonable Trial Tactic When he Referenced Morrow's Prior Drug Distribution

Next, Morrow contends Green was ineffective for conceding Morrow's guilt during opening statements and closing arguments.  Specifically, Morrow argues Green entered into a plea of guilty to Morrow's conspiracy charge when he admitted Morrow was involved in drug distribution.

Counsel cannot enter a guilty plea for a client against the client's wishes.  *Underwood v. Clark*, 939 F.2d 473 (7th Cir. 1991) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).  However, it is a reasonable trial strategy for counsel to admit that a client has committed a crime to gain favor with the jury on a separately-charged offense.  *Rodriguez v. United States*, 286 F.3d 972, 986 (7th Cir. 2002); *see also Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991) (finding defense counsel was not ineffective where he admitted his client's guilt and acknowledging that such an admission may be a good tactic where the evidence is

overwhelming).  "A lawyer is not required to consult with his client on tactical moves." *Underwood*, 939 F.2d at 474.

For instance, in *Rodriguez* defense counsel admitted that the defendant, who was charged with conspiring to import and distribute over 1,000 kilograms of marijuana, had delivered ten ounces of marijuana to a co-conspirator.  *Rodriguez*, 286 F.3d at 976, 985.  This concession was tactically used to demonstrate that the defendant was trying to defraud the co-conspirator and did not necessitate a finding of guilt on the conspiracy charge.  *Id*. at 985-86.  The court concluded this was a reasonable trial tactic and counsel was not ineffective.  *Id*. at 986.

Here, Green's admissions that Morrow previously distributed drugs did not necessitate a finding of guilt on his conspiracy charge in Count One.  Rather, considering the overwhelming evidence that Morrow had previously sold drugs, it was a reasonable trial tactic for Green to concede that point to gain favor with the jury.  Similar to counsel in *Rodriguez*, Green used this concession to argue that the Government could only prove that Morrow had sold drugs, but could not prove that he had entered into a conspiracy.  Accordingly, Green's performance was not deficient.

### vi. Morrow Fails to Show that Green Failed to Investigate the 2004 and 2007 Law Enforcement Interviews

Next, Morrow argues Green was ineffective for failing to investigate Morrow's 2004 and 2007 interviews with law enforcement.  Morrow argues that such an investigation would have revealed that Morrow's Fifth and Sixth Amendment rights to counsel were violated because he had counsel on separate cases at the time of the interviews and there "was no sign" that Morrow was "read his *Miranda* right[s]."  Doc. 1, p. 43.  He also raises arguments concerning the admission of Rule 404(b) evidence; however, the Court has already addressed that argument in this order and will not revisit it here.  "[A] petitioner alleging that counsel's ineffectiveness was

centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, 'a comprehensive showing as to what the investigation would have produced.'" *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (quoting *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990)).

Here, the Court has already concluded that Morrow's Sixth Amendment right to counsel was not violated by the use of the 2004 and 2007 interviews with law enforcement in this case. With regard to his Fifth Amendment claim, Morrow carefully states that there "was no sign" he was "read his *Miranda* right[s]," but he does he assert that he was, in fact, never read *Miranda* rights. His argument conclusively states that his Fifth Amendment right to counsel was violated, and he fails to assert what the investigation would have produced concerning the interviews. Accordingly, Morrow fails to establish that Green's conduct was deficient.

### vii.   Kramer was not Ineffective at Sentencing

Next, Morrow contends Kramer was ineffective for failing to raise the following arguments at sentencing: (1) there were unwarranted sentencing disparities between him and co-conspirators Dekal James and Williams; and (2) the gun enhancement was inconsistent with *Booker*. The Court will consider each argument in turn.

### 1.   There was No *Unwarranted* Sentencing Disparity

Title 18 U.S.C. § 3553(a)(6) provides that "the court, in determining the particular sentence to be imposed shall consider . . . the need to avoid unwarranted sentence disparities among defendant with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). "Section 3553(a)(6) does not allow unwarranted sentencing disparities between codefendants, but warranted disparities are allowed." *United States v. Turner*, 604 F.3d 381, 389 (7th Cir. 2010) (citations omitted).

Here, Dekal James pleaded guilty and testified against others.  Morrow, however, did not plead guilty or cooperate with the government.  Dekal James' relevant conduct was between 150 and 500 grams of crack, while Morrow's relevant conduct was over 4.5 kilograms of crack. Accordingly, Kramer's performance was not deficient because any disparity in sentencing was warranted.  For the same reason, Morrow suffered no prejudice.

Morrow's argument also fails with respect to Williams.  "[T]here can be no disparity between the defendant's sentence and the coconspirator's sentence when the latter does not even exist."  *United States v. Scott*, 631 F.3d 401, 405 (7th Cir. 2011).  There simply can be no sentencing disparity between Morrow's sentence and Williams' non-existent sentence. Accordingly, Kramer's performance was not deficient.  Further, Morrow suffered no prejudice because the Court could not have considered a disparity argument when no disparity existed.

## 2.  Morrow's Sentence was not in Violation of *Booker*

Morrow also argues that Kramer failed to raise a *Booker* argument based on the Government's failure to charge his gun enhancement in the indictment.  "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi v. New Jersey*, 530 U.S. 466, 489 (2000).  In line with *Apprendi*, *Booker* held that "judges may not find facts that increase the maximum punishment and that a mandatory sentencing guidelines scheme violates that rule."  *United States v. Robinson*, 435 F.3d 699, 701 (7th Cir. 2006). *Booker* then rendered the United States Sentencing Guidelines advisory to avoid this problem. *Id.* at 701-02.  As a consequence, courts are now clearly permitted "to grant a sentencing enhancement based on facts not charged in the indictment, not proven to a jury beyond a

reasonable doubt or not admitted by the defendant." *United States v. Owens*, 441 F.3d 486, 490 (7th Cir. 2006) (citing *Booker*, 543 U.S. at 226-27).

Here, the statutory provision for Count One provided for a sentence of twenty years to life, and Morrow was sentenced to 504 months imprisonment.  Count Ten's statutory provision called for a sentence of no more than twenty years, and he was sentenced to 240 months imprisonment.  His respective sentences do not exceed the statutory maximum and thus are not in violation of *Apprendi*.  Further, consistent with *Booker*, Morrow was not sentenced subject to a *mandatory* sentencing guidelines scheme.  Consistent with *Owens*, the Government was not required to charge Morrow's gun enhancement in the indictment.  Accordingly, because a *Booker* argument was inappropriate, Kramer's performance was not deficient.  Further, Morrow suffered no prejudice because the Court would not have considered a frivolous *Booker* argument.

### b.  Morrow's Fair Trial Claims are Procedurally Defaulted

Morrow next contends he was denied his right to a fair trial when the Government introduced perjured testimony and this Court failed to remain neutral.  A defendant cannot raise in a § 2255 motion constitutional issues that he could have but did not raise in a direct appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal or unless failure to consider the claim would result in a fundamental miscarriage of justice such as, for example, where a defendant is actually innocent of the crime.  *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000); *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).

Morrow failed to raise his fair trial claims listed in Grounds Eight and Nine on direct appeal.  He argues he could not raise these issues on direct appeal because he could not make his own arguments while represented by Kister.  He does not, however, allege Kister was

ineffective.  Finally, in his reply, Morrow argues that *United States v. Brooks*, 125 F.3d 484 (7th Cir. 1997), supports his contention that these claims are best raised on collateral appeal.  However, Brooks only explains that ineffective assistance of trial counsel claims are best raised on collateral appeal.  *Id*. at 495-96.  Accordingly, Morrow fails to show good cause for failing to raise these issues on direct appeal and they are procedurally defaulted.

### 3.  Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rule of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to Morrow.  A § 2255 petitioner may not proceed on appeal without a certificate of appealability.  28 U.S.C. § 2253(c)(1); *see Ouska v. Cahil-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Ouska*, 246 F.3d at 1045.  "A petitioner makes a 'substantial showing where reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'"  *Sandoval v. United States*, 574 F.3d 847 (7th Cir. 2009) (citing *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008)).

Because reasonable jurists could not debate that Morrow failed to show counsel was ineffective, he has failed to establish a substantial showing of the denial of a constitutional right.  Further, his claims that he was denied a fair trial are clearly procedurally defaulted.  Accordingly, the Court declines to issue a certificate of appealability.  However, pursuant to

Federal Rule of Appellate Procedure 22(b), Morrow may renew his request for a certificate of appealability to the Court of Appeals for the Seventh Circuit.

### 4.  **Morrow's Remaining Motions**

Three motions remain pending in this case.  First, Morrow filed a motion for judgment on the pleadings (Doc. 15) after the Government filed its third motion for an extension of time to file a response to Morrow's § 2255 motion.  Morrow argued his motion should be granted because the Government failed to respond on time.  However, the Court subsequently granted the Government's motion for an extension of time.  Accordingly, the Court denies Morrow's motion for judgment on the pleadings (Doc. 15) as moot.

Second, Morrow's motion for leave to expand the record (Doc. 18) asks this Court to allow him to expand the record to include evidence that "will help prove the prosecutorial misconduct claim."  Doc. 18, p. 2.  Because the Court has found that Morrow's prosecutorial misconduct claim is procedurally defaulted, the Court denies his motion to expand the record (Doc. 18).

Third, Morrow's motion for leave to amend (Doc. 20) asks this Court for leave to amend his § 2255 motion to add a claim alleging a *Brady* violation.  Morrow argues that his *Brady* violation claim would relate back to his prosecutorial misconduct claim in Ground Eight.  A motion for leave to amend a § 2255 motion is governed by Federal Rule of Civil Procedure 15 which provides that a "court should freely give leave when justice so requires."  Fed R. Civ. P. 15(a)(2); *Rodriguez v. United States*, 286 F.3d 972, 980 (7th Cir. 2002).  A court, however, may deny a motion to amend if such an amendment would be futile.  *Rodriguez*, 286 F.3d at 980. Section 2b of this Order found that Morrow's prosecutorial conduct claim was procedurally defaulted.  For the same reasons listed in Section 2b, an amendment to his complaint to include a

*Brady* violation would be futile.  Accordingly, the Court denies Morrow's motion to amend his §

2255 motion (Doc. 20).

**5.  Conclusion**

For the foregoing reasons, the Court:

- **DENIES** Morrow's § 2255 motion (Doc. 1);

- **DECLINES** to issue a certificate of appealability;

- **DENIES** Morrow's motions for judgment on the pleadings (Doc. 15), to expand the record (Doc. 18), and for leave to amend (Doc. 20); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.


**IT IS SO ORDERED.**

**DATED:** February 13, 2013

<u>s/ J. Phil Gilbert</u>
**J. PHIL GILBERT**
**DISTRICT JUDGE**